FILED
SUPERIOR COURT
OF GUAM

2020 APR -8 AM 11: 33

CLERK OF COURT

By: _____

## IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| PEOPLE OF GUAM, | CRIMINAL CASE NO. CF0410-18 |
| vs. | |
| JEFTA MOSES,<br>DOB: 08/22/1999 | DECISION AND ORDER |
| Defendant. | |

## INTRODUCTION

This matter came before the Honorable Arthur R. Barcinas on January 7, 2020, upon Defendant's Motion for a New Trial filed on December 3, 2019. Defendant Jefta Moses ("Defendant") was represented by Assistant Alternate Public Defender John Morrison Assistant Attorney General Christine S. Tenorio represented the People of Guam ("the People"). Having reviewed the pleadings and having heard oral arguments in this matter, the Court issues the following Decision and Order.

## BACKGROUND

In November 2019, a jury found the Defendant guilty of two (2) counts of First Degree Criminal Sexual Conduct (as a First Degree Felony), four (4) counts of Second Degree Criminal Sexual Conduct (as a Second Degree Felony); and four (4) counts of Fourth Degree Criminal Sexual Conduct (as a Misdemeanor). On December 3, 2019, the Defendant filed the instant Motion for a New Trial. On December 20, 2019, the People filed an Opposition. The Defendant did not file a Reply to the People's Opposition. On January 7, 2020, the Court heard oral arguments on the Motion and subsequently took the matter under advisement.

## DISCUSSION

The Defendant brings this Motion pursuant to Title 8 GCA § 110.30. Section 110.30(a) empowers the Court to grant a motion for a new trial when doing so would be "required in the interests of justice." Under Guam law, a trial court may grant a new trial at its sound discretion. *See, e.g., People v. Leslie*, 2011 Guam 11 ¶ 15. However, a new trial should be granted only "if [the Court] concludes that the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred." *People v. Messier*, 2014 Guam 33 ¶ 13 (internal citations omitted).

Here, the Defendant alleges that the prosecutor committed misconduct several times by making improper comments during closing arguments. Improper comments amount to prosecutorial misconduct when the comments "so [infect] the trial with unfairness as to make the resulting conviction a denial of due process." *People v. Moses*, 2007 Guam 5 ¶ 29 (citing *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)). However, "[t]he fact that the prosecutor's remarks to a jury may have been undesirable or even universally condemned is not tantamount to a constitutional violation." *Moses*, 2007 Guam 5 ¶ 29 (internal citations omitted). Hence, to determine whether reversible prosecutorial misconduct has occurred, the Court considers "whether it is more probable than not that the allegedly improper remarks materially affected the verdict." *Id.* ¶ 30.

### I.     Indirect Comment on Right Against Self-Incrimination

The Defendant admitted at trial that he had sex with J.W., but he maintained that the sex was consensual. Defense counsel argued this theory to the jury during closing arguments. On rebuttal, the prosecutor responded to the Defendant's argument, saying:

> "There is absolutely no evidence in this trial that shows [Moses's theory]. No evidence at all. So their version of events is completely unsupported by the evidence but do you remember what is part of the evidence? I asked [J.W.], 'Did [defense counsel] talk to you?' No. So what we have here is not just like some kind of like theory that's like out of nowhere. The theory I'm presenting to you is exactly what she said."

Jury Trial 11-25-19: 3:20:03. Immediately after the prosecutor made this statement, the Defendant moved for a mistrial on Fifth Amendment grounds, which the Court denied.

The Fifth Amendment to the United States Constitution provides that no person shall be compelled in any criminal case to be a witness against himself. U.S. CONST. amend. V. Accordingly, "no inference of guilty can be drawn from an accused's failure to take the stand at trial." *People v. Muritok*, 2003 Guam 21 ¶ 23; *see also* 8 GCA § 1.11(e). It is therefore improper for the prosecutor to directly comment to the jury about the defendant's decision not to testify. *People v. Cruz*, 2016 Guam 15 ¶ 19. A prosecutor's *indirect* comment about the defendant's decision not to testify also violates the constitutional right against self-incrimination if (1) it was the prosecutor's manifest intention to refer to the defendant's silence, or (2) the remark was of such a character that the jury would naturally and necessarily take it to be a comment on the defendant's silence." *Id.* (internal citations omitted).

In *United States v. Robinson*, 485 U.S. 25 (1988), the United States Supreme Court affirmed the principle that a prosecutor may not point to a defendant's exercise of his right to remain silent at trial as substantive evidence of his guilt. However, the Supreme Court declined to extend that same reasoning to "prohibit the prosecutor from fairly responding to an argument of the defendant by adverting to that silence." *Id.* at 34. Instead, the court held that "both the defendant and the prosecutor [must] have the opportunity to meet fairly the evidence and arguments of one another." *Id.* at 33. In the case at bar, the Court finds that the prosecutor's rebuttal argument was indeed a "fair response" to the defense counsel's theory and interpretation of the evidence. Unlike the improper comment in *Cruz*, the prosecutor did not emphasize the fact that the witness testimony was "unrefuted", thereby inviting the jurors to question why the defendant had not testified to refute the testimony. Here, by contrast, the timing and nature of the prosecutor's argument focused the jury on the evidence itself, not on the Defendant's failure to contradict that evidence. The Court does not find that this argument reflects a "manifest intent" on the prosecutor's part to refer to the Defendant's silence, nor that it "naturally and necessarily" asked the jury to consider the Defendant's silence. The prosecutor's argument was therefore not improper.

//

//

## II. Use of the Word "Rape"

Next, the Defendant alleges that the prosecutor improperly inflamed the jury by repeatedly using the word "rape" in closing arguments. The use of inflammatory vernacular is prejudicial when it is "specifically designed to inflame the sentiments of the community." *People v. Moses*, 2007 Guam 5 ¶ 33. However, the use of "common vernacular terms" is generally not an error. *People v. Roby*, 2017 Guam 7 ¶ 34 (citing *Ohio v. Geboy*, 764 N.E.2d 451, 460-61 (Ohio Ct. App. 2001)). Furthermore, even vernacular that may pose a risk of being inflammatory is permissible where "these phrases were introduced into evidence by the presented testimony." *People v. Evaristo*, 1999 Guam 22 ¶ 25.

The Defendant argues that the prosecutor's use of the word "rape" violates the Guam Supreme Court's warning in *Roby*, 2017 Guam 7:

> "We caution that context and frequency of use are important . . . [t]he People must use caution when employing vernacular that also shares legal meaning or is generally inflammatory and should avoid such terms when reasonable feasible. Terms such as "gang rape" evoke in the average listener grave disapprobation and risk unmooring jurors from their dispassionate task."

*Id.* ¶ 35. The Court disagrees with the Defendant. Although the word "rape" undoubtedly has the potential to evoke an emotional response, it is also the common lay term for the acts the Defendant stood accused of committing. Several witnesses, including the victim herself, frequently used the word in their testimony. The prosecutor could not have accurately and succinctly summarized the witness testimony without referencing the word that the witnesses used. Thus, it would not have been "reasonably feasible" for the prosecutor to have avoided using the word "rape". The Court is satisfied that the prosecutor's use of the word was not calculated to inflame the jury, but instead to reference what J.W. and the other witnesses had said. The Court therefore finds that the prosecutor's use of the word "rape" was not improper.

## III. Comments About What the Victim "Deserved"

The Defendant next argues that the prosecution made improper arguments to the jury about whether the victim "deserved" to be raped. The Defendant specifically challenges two arguments advanced by the prosecutor:

(1) "Did [J.W.] deserve this? That's up to you to decide." Jury Trial 11-25-19: 2:27:05

(2) "[J.W.] already blames herself for walking home . . . but that does not mean that she deserved to be raped." Jury Trial 11-25-19: 2:57:17.

These arguments by the prosecutor were improper; it is emphatically *not* the jury's role to decide whether a victim "deserved" what allegedly happened to him or her, or to factor that opinion into their final determination of guilt. The People explain that the prosecutor made these arguments "to appeal to possible juror sentiment that the Defendant should be acquitted because it was the victim's fault for walking alone that night." Opposition (Dec. 20, 2019) at 7. Ironically, in attempting to appeal against jury nullification, the prosecutor implicitly endorsed the notion that the jury was permitted to make and apply such a consideration.

The prosecutor's explanation is not a defense under the test for prosecutorial misconduct. The prosecutor's purpose in making an improper argument is irrelevant. The test is simply "whether it is more probable than not that the allegedly improper remarks materially affected the verdict." *Moses*, 2007 Guam 5 ¶ 30. Here, while the arguments were indeed improper, the Court finds it improbable that they materially affected the verdict. Throughout the trial, the Defendant maintained a defense of consent. The Court finds it considerably more likely that the jury rejected the Defendant's defense on account of J.W.'s lengthy testimony and the corroboration of aspects of her testimony by other witnesses than on account of two brief arguments made by the prosecutor during closing. Thus, while the prosecutor's questions were certainly "undesirable" within the meaning of *Moses*, 2007 Guam 5 ¶ 29, they were also unlikely to have materially altered the verdict. The Court therefore concludes that the arguments do not amount to reversible error.

## IV. Use of Second-Person Language

The Defendant next argues that the prosecutor erred during closing arguments by making an extended argument using the pronoun "you":

"If the criminal justice system has taught you anything in this case, if you come forward and you report that you've been raped, your whole life becomes at issue. Whether you put your kids to sleep at a certain bedtime, whether you're a good mom, whether you use a phone charger, whether you should have hailed a taxi

home. All of that is put before twelve random strangers to question whether you have the character to claim that you were falsely raped."

Jury Trial 11-25-19: 2:57:17. The Defendant argues that the prosecutor thereby asked the jurors to "put themselves in the place of the complainant." Mot. New Trial (Dec. 3, 2019) at 8. Asking jurors to place themselves in the complainant's shoes—violating the so-called "Golden Rule"—is a widely condemned practice. *See Evaristo*, 1999 Guam 22 ¶ 19. However, a Golden Rule violation is not necessarily a reversible error. In *Evaristo*, the Guam Supreme Court found that asking a murder trial jury to "imagine this knife being stuck in your wife" was improper. However, this did not amount to reversible error because the statement did not "so [infect] the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* ¶¶ 19-22.

As in *Evaristo*, the Court finds that the prosecutor's argument does not amount to a denial of due process. First, after closing arguments, the Court instructed the jury that they must only consider the evidence, and that arguments and statements by the lawyers are not evidence. In *Evaristo*, a similar court instruction contributed to a finding that no due process violation had occurred. *Id.* ¶ 21. Second, although the jury acquitted the Defendant on the criminal sexual conduct charges, the jury also acquitted him on a theft charge. A verdict acquitting the defendant of some of the charges against him is "indicative of the jury's ability to weigh the evidence without prejudice." *Id.* ¶ 22 (citing *United States v. Koon*, 34 F. 3d 1416, 1446 (9th Cir. 1994)). Third, the Court finds that the prosecutor's argument accurately referenced questions that defense counsel asked J.W. during cross-examination about her testimony. Hence, "the prosecutor's statements were supported by the evidence and reasonable inferences that could be drawn from the evidence . . . had the prosecutor delivered exactly the same speech in the third person, it would have been proper." *Drayden v. White*, 232 F.3d 704, 713 (9th Cir. 2000) (finding that similar prosecutorial comments, though improper, did not amount to a due process violation). The Court therefore concludes that the argument was an improper Golden Rule violation but that it does not amount to reversible error.

//

//

## V.    Mention of the Defendant's Race

Finally, the defense argues that the prosecutor's reference to the Defendant's race during closing arguments was improper.   The prosecutor summarized some of J.W.'s testimony, relating to the first person she spoke to after the incident, stating:

> "The first thing [J.W.] asks [the corroborating witness] is 'Are you Chuukese or Chamorro?'  I asked her 'why did you ask that' and she said, 'Because I'd just been raped by a Chuukese and I just wanted to feel safe because I'm Chamorro and I just felt, he's Chamorro and he'll help me."

Jury Trial 11-25-19: 2:26:45.  At the outset, the Court notes that this is an accurate summary of the relevant testimony.  However, "[t]o raise the issue of race is to draw the jury's attention a characteristic that the Constitution generally commands us to ignore." *McFarland v. Smith*, 611 F.2d 414, 417 (2d Cir. 1979).  Furthermore, "[c]oncern about fairness should be especially acute where a prosecutor's argument appeals to race prejudice in the context of a sexual crime, for few forms of prejudice are so virulent." *Miller v. North Carolina*, 583 F.2d 701, 707 (4th Cir. 1978).

The People argue that the prosecutor was justified in referring to this testimony because it was relevant to the issue of identification.  However, identification was never at issue in this trial. The Defendant admitted in his opening arguments that he had sex with J.W.; his defense was consent.  The People argue that the prosecutor was not made aware before trial began that the Defendant would not contest identification.  Even if this was true at the beginning of trial, it should have been abundantly clear by closing arguments that the Defendant was not contesting identification.  Accordingly, there was no legitimate purpose for the prosecutor to call attention to either the Defendant's or J.W.'s race in closing arguments, and it was error to do so.  To be clear, the Court does not suggest that the prosecutor made an intentional, calculated appeal to race prejudice.  However, "[e]ven a reference that is not derogatory may carry impermissible connotations, or may trigger prejudiced responses in the listeners that the speaker might neither have predicted nor intended." *McFarland*, 611 F.2d at 417.  Thus, the Court finds that the error was the prosecutor's action, not the intention.

The closer question is whether this improper statement constitutes reversible error. The Defendant cites *State v. Shabazz*, 98 Haw. 358 (Haw. Ct. App. 2002), a case in which the Hawai'i Intermediate Court of Appeals reversed a defendant's conviction because the prosecutor described the alleged victim as a "local woman" and the defendant as an "African-American male". *See id.* at 374-83. *Shabazz* is not binding precedent in this jurisdiction, nor is *State v. Rogan*, 984 P.2d 1231 (Haw. 1999), the case which created the analytical framework for the *Shabazz* decision. Furthermore, while the Defendant correctly notes that Guam Supreme Court cited *Shabazz* in its decision in *Roby*, 2017 Guam 7 ¶ 35, this citation was solely to strengthen the Supreme Court's proposition that "context and frequency of use [of inflammatory vernacular] are important," rather than a broader adoption of that state's prosecutorial misconduct jurisprudence. This is significant because, in both *Shabazz* and *Rogan*, the courts employed a different test for prosecutorial misconduct than Guam does.

As *Shabazz* and *Rogan* both explain, Hawai'i reviews prosecutorial misconduct under a "harmless beyond a reasonable doubt" standard, which requires "an examination of the record and a determination of *whether there is a reasonable possibility* that the error complained of *might have contributed to the conviction*." *Shabazz*, 98 Haw. at 375 (citing *Rogan*, 984 P.2d at 1238) (emphasis added). The *Shabazz* court reversed the defendant's conviction upon finding a "distinct and reasonable possibility that the prosecutor's references to race might have contributed to the convictions." *Shabazz*, 98 Haw. at 382. By contrast, as discussed throughout this Decision and Order, Guam applies the more stringent standard of "whether it is *more probable than not* that the allegedly improper remarks *materially affected the verdict*." *Moses*, 2007 Guam ¶ 30 (emphasis added). Thus, even if the Court were to make a *Shabazz*-like finding that it was "reasonably possible" that the prosecutor's error "contributed to the conviction", that finding would not amount to reversible error under Guam law.

Instead, the Court must apply Guam's standard and ask whether it is more probable than not that the prosecutor's references to race materially affected the verdict. The Court does not believe this is probable. First, the prosecutor's racial references were not derogatory. While this does not excuse the prosecutor's error, it does reduce the likelihood that the error inflamed

the jury in such a way as to materially affect the verdict. Second, these references were made in summarizing witness testimony, rather than introducing the prosecutor's own opinion. Again, this does not excuse the error, but the fact that the jury had already heard this testimony reduces the likelihood that hearing it again from the prosecutor materially affected the verdict. Furthermore, the Court reads *Evaristo*, 1999 Guam 22 ¶ 25, to suggest that where a prosecutor repeats phrases introduced via witness testimony, the otherwise-prejudicial effect is blunted. Finally, the other evidence in this trial, though not overwhelming, was more than sufficient to sustain the Defendant's conviction. Thus, the Court finds it more probable that the conviction was based on properly introduced evidence such as J.W.'s testimony rather than being compelled by improper prosecutorial statements. Accordingly, the Court does not find it more probable than not that the prosecutor's racial references materially affected the verdict. These references, while improper, do not amount to reversible error.

## CONCLUSION

For the reasons set forth above, the Court does not find that any of the prosecutor's improper statements amounted to reversible error. Thus, the Court finds that it would not serve the interests of justice to grant the Defendant a new trial on the basis of prosecutorial misconduct. The Court therefore **DENIES** the Defendant's Motion for a New Trial.

IT IS SO ORDERED **APR 0 8 2020** _____.

HONORABLE ARTHUR R. BARCINAS
Judge, Superior Court of Guam